IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MICHAEL J.W. GARFIELD**,

    Plaintiff,

    v.

**CAROLYN W. COLVIN**,
Acting Commissioner of Social Security,

    Defendant.

Case No. 6:13-cv-00908-SI

**OPINION AND ORDER**

Kathryn Tassinari and Rob Baron, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201; Jordan D. Goddard, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

PAGE 1 – OPINION AND ORDER

Michael J.W. Garfield seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is free of legal error and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted). On the other hand, the Court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226. But as long as "the agency's path may reasonably be discerned," the Court must affirm the agency's decision, even though the agency may have explained it with "less than ideal clarity." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted).

BACKGROUND

Mr. Garfield was born on June 30, 1977. AR 21. He allegedly became disabled on January 12, 2008, at 30 years of age. AR 13. On August 25, 2009, he protectively filed for DIB and SSI. *Id.* His claim was initially denied on December 22, 2009, and again upon reconsideration on March 11, 2010. *Id.* He then requested an administrative hearing before an ALJ, which took place on November 16, 2011. *Id.* The ALJ also denied his claim, finding that he was not disabled within the meaning of the Social Security Act from January 12, 2008, through the date of the decision, February 2, 2012. AR 14. The Appeals Council denied review, AR 1, making the ALJ's decision final and entitling Mr. Garfield to review by this Court. 42 U.S.C. § 405(g).

## A. The Five-Step Disability Inquiry

A social-security claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, he or she is not

disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## B. The ALJ's Decision

At step one, the ALJ found that Mr. Garfield had not engaged in substantial gainful activity since his alleged disability onset date, January 12, 2008. AR 16. At step two, the ALJ

PAGE 5 – OPINION AND ORDER

found that Mr. Garfield had the following impairments which rose to the threshold level of "severe": "disorders of the back, seizure disorder, migraines, obesity, and adjustment disorder (with mixed disturbance of emotion and conduct)." *Id.*

At step three, the ALJ did not find that Mr. Garfield's severe impairments met or medically equaled any of the impairments found in the Listings. AR 16-17. The ALJ then assessed Mr. Garfield's RFC as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to lift and/or carry ten pounds frequently and twenty pounds occasionally, is able to sit for about six hours total during a normal eight-hour workday (with normal breaks), and is able to stand/walk for about six hours total (with normal breaks) during an eight-hour workday. He is able to perform push-pull activities without limit except as shown for lift/carry; able to climb ramps and stairs on a frequent basis; and able to perform all other postural activities on an occasional basis.
>
> The claimant must avoid concentrated exposure to noise, vibrations, and workplace hazards such as unprotected heights, unguarded, moving machinery, etc. Such work must consist of tasks requiring only simple reasoning and that can be learned in 30 days or less, that is, unskilled work; and it may require only simple work-related decision-making. Such work may require only minimal contact with coworkers; for example, the person could work in the general vicinity of co-workers, but the person could not be a member of a team. Such work may require no more than occasional contact with supervisors after the initial 30-day period.

AR 17-18 (paragraph break added). In making this determination, the ALJ reviewed evidence from and made credibility determinations about several sources, including Mr. Garfield himself; his mother, Pamela Garfield; various emergency room providers; Barbara Jacobson, a nurse practitioner at the Umpqua Community Health Center ("UCHC") Roseburg clinic; Teresa Ruderman, an RN at Oregon Vocational Rehabilitation Services; and examining psychologists Allan Kirkendall, Ph.D., and Wayne Taubenfeld, Ph.D. AR 20-21.

PAGE 6 – OPINION AND ORDER

At step four, the ALJ found that Mr. Garfield could not perform any of his past relevant work. AR 21. At step five, the ALJ asked the Vocational Expert ("VE") what work might exist in the national economy for the following hypothetical individual:

> This hypothetical individual is able to perform work . . . at the light exertional level, able to lift and or carry 10 pounds frequently and 20 pounds occasionally, able to sit for about six hours during a normal eight hour work day with normal breaks, able to walk and or stand for about six hours total with normal breaks during a normal eight hour work day, able to perform push, pull activities without moving . . ., able to climb ramps and stairs on a frequent basis, able to perform all other postural [activities] on an occasional basis. . . .
>
> [This] individual should avoid concentrated exposure to workplace hazards such as unprotected heights, unguarded moving machinery, . . . [and] noise and vibrations. The work involved for such an individual must consist of tasks that require only simple reasoning and can be learned in 30 days or less. That is to say, unskilled work. And this work . . . could require only simple decision making . . . .
>
> The work could require only minimal contact with coworkers. That is to say, this person could work in the general vicinity of other workers, but not as a part of a team working with them. The work would require no more than occasional contact with supervisors, certainly after . . . [a] 30 day period, no more than occasional contact with supervisors.

AR 95-96 (paragraph breaks added).

Based on the VE's response, the ALJ found that Mr. Garfield could perform at least three jobs that exist in significant numbers in the national economy: small-products assembler II, electronics worker, and food assembler. AR 22. Accordingly, the ALJ found that Mr. Garfield was not disabled. AR 23.

## DISCUSSION

Mr. Garfield argues that the ALJ improperly rejected the medical opinion of his examining psychologist, Dr. Taubenfeld, and the lay opinion of his mother, Pamela Garfield. Mr.

PAGE 7 – OPINION AND ORDER

Garfield contends that, crediting those opinions as true, the following limitations should have been included in the hypothetical presented to the VE: (1) that the person could not consistently interact appropriately with coworkers or supervisors; (2) that the person would interact inappropriately with supervisors about a third of the time, regardless of the level of contact; and (3) that the person had a processing speed about 15 percent slower than that of his coworkers.[1] Mr. Garfield further contends that the ALJ failed to include his own finding that Mr. Garfield had moderate limitations in concentration, persistence, or pace.

**A.  Dr. Taubenfeld's Opinion**

An ALJ must provide "clear and convincing reasons that are supported by substantial evidence" to reject the uncontradicted opinion of an examining doctor. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If an examining doctor's opinion is contradicted by that of another, however, an ALJ need only provide "specific and legitimate reasons that are supported by substantial evidence" for accepting one and rejecting the other. *Id.*

An ALJ may reject a medical opinion that is contradicted by another if it is "brief, conclusory, and inadequately supported by clinical findings." *Id.* (citation omitted). For example, an ALJ may "permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d at 1111 (quotation marks and alterations omitted).

Furthermore, a doctor's particular statements "must be read in context of the overall diagnostic picture he draws." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). An ALJ may properly reject a doctor's opinion if it conflicts with the doctor's treatment notes, read in full and in context. *Holohan*, 246 F.3d at 1205.

---

[1] The VE testified that a hypothetical person with any of these additional limitations could not be competitively employable. AR 102-104.

PAGE 8 – OPINION AND ORDER

Finally, if an ALJ has properly discounted a claimant's self-reporting as incredible, he may also reject an examining doctor's opinion that is based largely on the claimant's own reporting, "with little independent analysis or diagnosis." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In such a case, the doctor's opinion may properly be assigned the same weight as the claimant's own testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ made three determinations relevant to Dr. Taubenfeld's opinion. First, he found that Mr. Garfield had limited credibility due to various discrepancies and unsubstantiated claims in his testimony. AR 19-20. Second, he found that Dr. Taubenfeld's opinion was largely premised on an "uncritical acceptance of the claimant's unsubstantiated allegations," and therefore merited "limited weight." AR 21. And third, in contrast, he found that that Dr. Kirkendall's opinion was well supported by substantial objective evidence and therefore merited "substantial weight." AR 20. Mr. Garfield takes issue only with the second of these determinations: He argues that Dr. Taubenfeld in fact based his diagnoses on neuropsychological test results.

Dr. Taubenfeld provided two separate opinions of Mr. Garfield. The first was occasioned by an examination of Mr. Garfield on April 21, 2011. AR 429. Dr. Taubenfeld took Mr. Garfield's personal and medical history and administered a battery of cognitive and psychological tests "to determine whether [he had] any mental, cognitive, or emotional difficulties that would affect [his] ability to be gainfully employed[ or] retrained." *Id.*

On the Wechsler Adult Intelligence Scale, 3d ed., Mr. Garfield received an "Average" score for "Processing Speed." AR 432. He also received a "Low Average" score on "Perceptual Organization," which is related to visual reasoning, and "Borderline" on "Working Memory."

PAGE 9 – OPINION AND ORDER

AR 432-34. These latter scores were corroborated by similar scores in the Wechsler Memory Scales, 3d ed., test. AR 434. The conclusion Dr. Taubenfeld drew was that Mr. Garfield "performs better on verbal tasks than visual ones." AR 435. Based on a separate test involving "attention, concentration, resistance to distraction, and cognitive flexibility," Dr. Taubenfeld concluded that "there are no significant deficits or problems." *Id.* And from yet another test, Dr. Taubenfeld ascertained that Mr. Garfield "[did] not present with any type of ADHD." AR 436. In a summary of his conclusions, however, Dr. Taubenfeld for the first time concluded that Mr. Garfield had problems with concentration. AR 440.

Dr. Taubenfeld's second opinion was provided several months later, in a Medical Source Statement form. AR 458. Here, Dr. Taubenfeld opined for the first time that Mr. Garfield's "[p]rocessing speed is low [and] that will affect his ability to . . . stay up to pace on the job." AR 459. Mr. Garfield relies on Dr. Taubenfeld's summary conclusion and Medical Source Statement form to argue that a slow-processing-speed limitation should have been included in the hypothetical to the VE. But both statements are "brief, conclusory, and inadequately supported by clinical findings," *Bayliss*, 427 F.3d at 1216, and neither is consistent with the overall diagnostic picture Dr. Taubenfeld drew. *Cf. Holohan*, 246 F.3d at 1205. The ALJ, therefore, properly rejected Dr. Taubenfeld's opinion in this regard.[2]

With regard to social and emotional functioning, there is substantial evidence in the record supporting the ALJ's conclusion that Dr. Taubenfeld's objectivity appeared compromised by the patient's self-reporting. For example, even though Mr. Garfield scored low on objective

---

[2] Mr. Garfield also argues that the ALJ should have addressed Dr. Taubenfeld's recommendation that Mr. Garfield be trained verbally rather than visually, but mere recommendations have no place in the RFC determination. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Dr. Horowitz's proposal was offered as a *recommendation*, not an imperative." (emphasis in original)).

measures of Post-Traumatic Stress Disorder ("PTSD"), Dr. Taubenfeld concluded that "the history clearly indicates past history of PTSD. Thus, it is clearly a diagnosis in remission." AR 441.[3] And whereas his opinion immediately after the April 21 examination was tentative and hesitant—"these symptoms *suggest* potential difficulties in the workplace," AR 441 (emphasis added)— several months later, on the Medical Source Statement, he checked boxes indicating that Mr. Garfield would have "extreme" and "marked" difficulty interacting appropriately with supervisors, co-workers, and the public. AR 460.

Such discrepancies and reliance on a claimant's discredited self-reporting are substantial and legitimate reasons for rejecting a doctor's opinion. *Cf. Molina* 674 at 1111 (affirming an ALJ's rejection of unexplained "check-off reports"); *Tommasetti*, 533 F.3d at 1041 (affirming an ALJ's rejection of doctor's opinion based on claimant's unreliable self-reporting). The ALJ's decision to give greater weight to the contradicting opinion of Dr. Kirkendall, who also examined Mr. Garfield, was a rational interpretation of the evidence, and must therefore be affirmed by this Court. *Cf. Burch*, 400 F.3d at 679.

**B.  Pamela Garfield's Letter**

Lay witnesses are competent to give testimony about a claimant's symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). They are not, however, competent to provide medical diagnoses. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ may discount competent lay witness testimony by "giv[ing] reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

---

[3] On the cover page of his report, Dr. Taubenfeld indicates the sources on which he relied. Although a "Structured Clinical interview" is listed, medical records are not. AR 429. Accordingly, there was substantial evidence for the ALJ to rationally infer that where Dr. Taubenfeld referred to Mr. Garfield's history, he was relying on information from the interview.

Here, Pamela Garfield submitted a letter asserting that the claimant had Attention Deficit Hyperactivity Disorder ("ADHD") as a child, had trouble "stay[ing] on a track," and was "always alone" growing up. AR 242. The ALJ considered these assertions and gave them "[s]ome weight." AR 19-20. But he also noted some inconsistencies between Ms. Garfield's assertions and the medical evidence—for example, that Dr. Taubenfeld had not diagnosed Mr. Garfield with ADHD or Attention Deficit Disorder ("ADD"). *Id.* That observation is a sufficiently germane reason for not fully crediting Ms. Garfield's letter.[4] *Cf. Bayliss*, 427 F.3d at 1218.

## C. The ALJ's Step 3 Findings

Mr. Garfield also argues that the ALJ improperly failed to include, in his assessment of Mr. Garfield's RFC, his own finding that Mr. Garfield had "moderate difficulties" with regard to "concentration, persistence, or pace." AR 17. But that finding was made as part of the analysis at step 3, under "paragraph B" of the psychiatric review technique described in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00A. Such findings "are not an RFC assessment." Social Security Ruling 96-8p, *available at* 1996 WL 374184, at *4 (July 2, 1996). Determining a claimant's mental RFC "requires a more detailed assessment" and is a distinct and separate analysis. *Id.* Accordingly, the ALJ properly did not use assessments made in Step 3 for RFC purposes.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Mr. Garfield is not disabled.

**IT IS SO ORDERED**.

---

[4] Mr. Garfield also draws attention to Ms. Garfield's assertion that he was "always alone." Whether or not that observation was credited, it is accounted for in the ALJ's hypothetical to the VE: "The work could require only minimal contact with coworkers." AR 96.

DATED this 22d day of September, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge